1
      IN THE UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF TEXAS
2                BROWNSVILLE DIVISION

3
_____
                                         ) CRIMINAL ACTION NOS.
4  UNITED STATES OF AMERICA               ) B-09-1005 AND
                                          ) B-10-52
5  VS.                                    )
                                          ) 1:38 P.M. TO 1:39 P.M.
6  GERONIMO SALVADOR SANTOS-NUEZ          ) 2:24 P.M. TO 2:32 P.M.
_____ ) 4:10 P.M. TO 4:27 P.M.
7
        SENTENCING AND REVOCATION OF SUPERVISED RELEASE
8            BEFORE THE HONORABLE HILDA G. TAGLE
                    JANUARY 27, 2010
9
   APPEARANCES:
10
   For the Government:        MR. ANGEL CASTRO
11                            Assistant United States Attorney
                              600 East Harrison, Suite 201
12                            Brownsville, Texas  78520

13  For the Defendant:        MR. RUDY RODRIGUEZ
                              Assistant Federal Public Defender
14                            600 East Harrison, Suite 102
                              Brownsville, Texas  78520
15
   Official Court Interpreter: MS. KAREN PENA
16
   Transcribed by:           HEATHER HALL
17                            Official Court Reporter
                              600 East Harrison, Box 16
18                            Brownsville, Texas  78520
                              (956)548-2510
19
   Proceedings recorded by mechanical stenography, transcript
20 produced by computer.

21
       **THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER
22     THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED
       BY COURT ORDER.  UNAUTHORIZED REPRODUCTION WILL RESULT IN
23     AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL
       AND ONE COPY AT THE OFFICIAL RATE.  General Order 94-15,
24     United States District Court, Southern District of Texas.**

25

1      *(The Court heard other matters.)*

2              THE COURT:  Okay.  09-CR-1005 and 10-CR-52, the

3   *United States of America versus Geronimo Salvador Santos-Nuez.*

4              What says the government?

5              MR. CASTRO:  Angel Castro for the government,

6   Your Honor.  Ready.

7              THE COURT:  What says the defendant?

8              MR. RODRIGUEZ:  Rudy Rodriguez.  We're ready.  No

9   objections.  We do have a downward departure, and that will be a

10  plea of true, Your Honor.

11     *(The Court heard other matters.)*

12             THE COURT:  Geronimo Salvador Santos-Nuez, 09-CR-1005

13  and 10-CR-52.

14             MR. CASTRO:  Angel Castro for the government,

15  Your Honor.

16             MR. RODRIGUEZ:  Rudy Rodriguez for Mr. Santos,

17  Your Honor.

18             THE COURT:  Good afternoon, sir.

19             Mr. Rodriguez, does your client prefer to sit?

20             MR. RODRIGUEZ:  Yes, Your Honor.

21             THE COURT:  All right.

22             First of all, is there an objection to the report and

23  recommendation of the magistrate judge by the government?

24             MR. CASTRO:  No objection, Your Honor.

25             THE COURT:  By the defendant?

1              MR. RODRIGUEZ:  None, Your Honor.

2              THE COURT:  Then that report is approved and is

3    adopted by the Court, and the defendant's plea of guilty is

4    accepted.  And based upon the evidence in the record at

5    re-arraignment and the defendant's plea of guilty, the Court

6    finds that the defendant, Geronimo Salvador Santos-Nuez, is

7    guilty of the crime of being an alien unlawfully present in the

8    United States after having been convicted of a felony and

9    deported as alleged in this indictment.

10             The Court, having found the defendant guilty, will

11   proceed with sentencing.

12             Mr. Rodriguez, have you reviewed the presentence

13   report in cause number 09-CR-1005 with your client?

14             MR. RODRIGUEZ:  I have, Your Honor.

15             THE COURT:  Are there any objections?

16             MR. RODRIGUEZ:  There are no objections, Your Honor.

17             THE COURT:  Then I now call our cause number 10-CR-52,

18   which was originally 05-CR-1232, a case out of the Southern

19   District of New York.

20             Sir, are you the Geronimo Salvador Santos-Nuez who in

21   that cause number out of the Southern District of New York was

22   found guilty of illegal reentry of a deported alien and

23   thereafter sentenced to a term of imprisonment of 20 months

24   followed by a three-year term of supervised release?

25             THE DEFENDANT:  Yes.

1              THE COURT:  At the time that you began your

2  supervision on April 27th, 2007, did you understand that there

3  were certain standard, mandatory, and special conditions of

4  supervised release that you had to comply with?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you understand that that included that

7  you were not to commit a crime, state, federal, or local?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you received a copy of the petition

10 in that case that alleges that you violated that condition in

11 that you committed the offense of being an alien unlawfully

12 entering or present in the United States after having been

13 denied admission, excluded, deported, or removed, and that you

14 had not obtained consent of the Attorney General or the

15 Secretary of Homeland Security -- of the Department of Homeland

16 Security to reapply for admission into the United States and

17 that that occurred on or about July 25th, 2009, in Cameron

18 County, Texas?

19             THE DEFENDANT:  Yes.  Yes, Your Honor.

20             THE COURT:  How do you plead to that allegation, true

21 or not true?

22             THE DEFENDANT:  Guilty.

23             THE COURT:  Is it --

24             THE DEFENDANT:  True.  True.

25             THE COURT:  All right.  Then based upon your plea of

```
1   true, the Court finds that you have violated your term of
2   supervised release as alleged in this petition.  The Court,
3   having so found, will proceed to hear from the government on
4   both the new indictment, 09-CR-1005, and the petition for
5   revocation filed under our cause number 10 -- excuse me --
6   10-CR-52.
7           Mr. Castro, for the government?
8           MR. CASTRO:  Your Honor, the government would offer
9   Exhibit No. 1, which is a three-page document reflecting the
10  conviction for the conspiracy -- conspiracy to distribute
11  cocaine used for the 16-level enhancement.
12          MR. RODRIGUEZ:  No objection, Your Honor.
13          THE COURT:  Admitted.
14          MR. CASTRO:  Your Honor, we would also move for the
15  third acceptance point.
16          THE COURT:  Motion's granted.
17          MR. CASTRO:  This would result in an offense level 21,
18  with a criminal history category of five, a sentencing range of
19  70 to 87 months.  In light of the fact that he does have a
20  prior -- or that he does have a revocation, and considering the
21  pleadings that he has filed through his attorney, we would
22  suggest that the sentence -- the low end of the 70 months would
23  be a reasonable sentence in this case given the fact that he
24  does have two prior drug convictions along with a prior illegal
25  reentry conviction in which it appears that he was apparently
```

1   given consideration for the same type of relief that he's

2   seeking here today.

3           By my calculations paragraph 25, that conviction

4   should have resulted in a guideline range of 57 to -- to 71

5   months considering a level 21 with a criminal history category

6   of four, and he was only sentenced to 20 months.  Obviously that

7   consideration didn't keep him from coming back, and he will

8   obviously continue coming back to the United States.

9           I understand he says that he fears for his life in --

10  in his country; however, this -- this instance he was coming in

11  through Mexico, so certainly didn't fear his life in Mexico.  He

12  consciously decided to come into this country knowing that he

13  had those convictions and that maybe he could take advantage of

14  this -- him having cooperated before because he was a -- a drug

15  trafficker.  So we would suggest that the 70 months is

16  reasonable.

17          We would ask the Court to consider on the revocation,

18  based on his plea of true, a 12-month sentence and to run that

19  consecutive.

20          THE COURT:  Mr. Rodriguez, on behalf of your client?

21          MR. RODRIGUEZ:  Your Honor, we do have a motion for

22  downward departure, if I may address that, Your Honor.

23          THE COURT:  Go ahead.

24          MR. RODRIGUEZ:  Your Honor, at this time we'd offer

25  Defendant's Exhibit No. 1, which is a letter from my client's

1    wife, Defendant's Exhibit No. 2, which is an affidavit signed by

2    a police detective in New York City, and our Exhibit No. 3,

3    Your Honor, is three letters from his mom, his sister, and

4    brother.

5          We also have attached to Exhibit 3, Your Honor, an

6    arrest report from 2008, September, from the Dominican Republic,

7    and also the medical records as a result of an attempt on his

8    life, Your Honor, if I may offer these at this time.

9          MR. CASTRO:  No objection, Your Honor.

10         THE COURT:  Admitted.

11         Well, you're going to have to give me a chance to read

12   all of this.

13         MR. RODRIGUEZ:  Yes, Your Honor.

14         THE COURT:  And, actually, I'd like to do so before I

15   rule on any motions, so I think I'm going to have to recess so

16   that -- I mean, it's a little bit lengthier than what Mr. Wilde

17   previously offered in one of his -- one of his sentencings.  So

18   let me recess, and I'll take you up after I conclude everybody

19   else's sentencing.

20         MR. RODRIGUEZ:  Thank you, Your Honor.

21         MR. CASTRO:  Thank you, Your Honor.

22         MR. RODRIGUEZ:  May I be excused temporarily,

23   Your Honor?

24         THE COURT:  Yes.

25      *(The Court heard other matters.)*

1           THE COURT:  Thank you.  Please be seated.

2           All right.  The Court having reviewed the exhibits,

3   I'll prepare to hear from -- let's see.  Well, it was -- there's

4   not a plea agreement in connection with the new indictment, and

5   so first, if I haven't -- I'm sorry.  It's a while ago since I

6   called this case originally, but if I've not heard from the

7   government on cause number -- in cause number 09-CR-1005 and in

8   connection with the petition for revocation, the sanction in

9   that case, 10-CR-52, I'll hear from the government again,

10  please.

11           MR. CASTRO:  Yes, Your Honor.  There is no -- there is

12  no agreement, and once again we would -- we would argue that --

13  and we have already moved for the third acceptance point, so the

14  guideline range -- he scores at level 21 and a criminal history

15  category of five, 70 to 87 months.

16           We had asked the Court to consider the 70 months in

17  light of the fact that he does have two prior drug convictions

18  along with a prior illegal entry conviction where the guideline

19  range, based on -- on the prior conviction would have been 57 to

20  60 -- 57 to 71 months, and the judgment reflects that he only

21  received 20 months.

22           We would ask the Court to consider the 70 months as a

23  reasonable sentence in light of those factors and in light of

24  the fact that -- with regards to the revocation, we'd ask the

25  Court to consider the 12 months and to run it consecutive.

1          THE COURT:  Mr. Rodriguez, I'll hear from you now on

2     your motion for downward departure now that I've read your

3     exhibits, and I'm going to allow the government to respond.

4          MR. RODRIGUEZ:  Your Honor, we're asking for the Court

5     to consider a downward departure in this case.  My client,

6     Mr. Santos, is 34 years old.  He's a citizen of the Dominican

7     Republic.

8          Our basis of the departure, Your Honor, is that he had

9     no other alternative, Your Honor, but to return to this country.

10    We don't dispute that he has the two drug convictions,

11    Your Honor, but what we do wish to show the Court is that his

12    life has been under constant threat since he was deported in

13    2005.

14         Your Honor, he was there not even a month when two

15    gentlemen came looking for -- three gentlemen, actually, came to

16    his mother's house looking for him.  He ran.  He stayed in

17    another city there in the Dominic for a few months, and then he

18    tried to reenter the United States.

19         After serving his time for that reentry, he was again

20    deported, and within three months after being back, a trap was

21    set by Mr. Gutierrez's underlings.  They ran into -- rammed into

22    his car.  He was injured pretty severely, a broken leg which is

23    still not healed correctly, Your Honor.

24         Your Honor, if we look at this -- and I presented the

25    police report, Your Honor.  It's pretty clear that these two men

1    that were arrested in the car that rammed his car had guns, and

2    apparently there was an indication that they were working for a

3    drug lord, Sergio Gutierrez.

4           Your Honor, my client, during those two drug

5    convictions, did cooperate.  He did help arrest Sergio

6    Gutierrez, and recently -- I spoke with Officer Rivera from New

7    York City, Your Honor.  He confirmed -- and Ms. Melissa Montes

8    from probation talked to him also.  Just this -- I think he said

9    within the last two months he arrested the two sons of Sergio

10   Gutierrez for murder there in New York.

11          So this is a very serious occurrence that's going on,

12   Your Honor.  This is a man who's running for his life.  He

13   actually went to Columbia at one point but was sent back to the

14   Dominican Republic, Your Honor, and that's when he made this

15   reentry.

16          This is a man who I believe truly fears for his life,

17   and he tried to stay legally, Your Honor.  He filed that asylum

18   application in 2007, and the reason it was denied, Your Honor,

19   was because there was no link between the drug lord and the

20   government.  What the judge did say in that report, though, was

21   that he found credible fear.  He found that this man does have

22   fear and that he is in danger, but due to the fact that he could

23   not relate the endangerment to a government official, his asylum

24   application was denied.

25          Your Honor, we're asking this Court to depart downward

1    to 20 months.  When Mr. Castro said that he was given a break or

2    somehow helped at the last reentry, I don't know that,

3    Your Honor.  All I know is that maybe it was a liberal judge in

4    New York.  Maybe some judges don't consider illegal reentries

5    that serious in other parts of the country.  I know here we

6    do -- or maybe the judge used the 3553(a) factors, Your Honor.

7            I don't know why he got 20 months on that, but to

8    imply that he should be punished here more severely or get

9    punished and no break here simply because he got less time over

10   there I don't think is a good argument.

11           Your Honor, what I'm asking this Court for -- and I

12   think I've hopefully provided the Court with sufficient proof

13   that this is not a made-up story.  This is a man that's hurt,

14   and, Your Honor, he was so desperate he crossed this river with

15   this injured leg.  He came into this country like this.  This is

16   a man who's in fear, Your Honor.

17           I'm asking the Court for consideration.  I'm asking

18   the Court for a sentence of 20 months on the basis of no other

19   alternative.  He did go to Columbia.  He tried to stay.  They

20   kicked him out of there, and on that basis I'd ask the Court for

21   a sentence of 20 months.

22           THE COURT:  Well, the concern I have is that, you

23   know, no matter how credible his fear is and the basis for it,

24   you know, his sister, in her statement to the immigration court,

25   said that she had even seen people in her neighborhood -- she

1  lives here in the United States -- who she believes are looking

2  for him.  His mother says that, you know, people regularly

3  threaten him in -- in the Dominican Republic.

4       So, I mean -- I don't know.  It sounds like you're

5  asking that I give him a reduced sentence so he can go back home

6  to where he's being threatened.  I mean, have you kind of been

7  able to consider the two things and what you're really asking me

8  to do or -- because I'm concerned that ultimately if I do, you

9  know -- if I were to sentence him to what you requested, then

10  that means that's just going to give him a time, you know, to

11  come back to the United States or that he would be coming back

12  to the United States, or I'm not sure exactly what his plan

13  would be.

14       So I mean, you know, he's in danger in New York.  He's

15  in danger in -- in his country.  So what is it -- what is the

16  plan if he got deported from Columbia as well?

17       MR. RODRIGUEZ:  Well, I haven't discussed with

18  Mr. Santos the possibility of trying to apply to Canada.  If

19  he's in jail for two years, the 20 months, Your Honor, that may

20  give him sufficient time to try to get into Canada in order to

21  avoid going back home or some other country.

22       I mean, the Gutierrezes are in the Dominican Republic,

23  there's no doubt, and they're also in New York.  And so my guess

24  and my hope is that during his incarceration he'll be able to

25  apply to Canada and try to get citizenship there or at least

1   some residency in order to avoid going back to the Dominican

2   where I think he will be injured again.

3          THE COURT:  Well, sir, is there anything you would

4   like to say before you're sentenced?

5          THE DEFENDANT:  Yes, Your Honor.  The first thing I'd

6   like to say to Your Honor:  When I finish the time that you're

7   going to give me, I'm going to return or try to get a house --

8   Immigration so I can either get political asylum or another

9   country might help me out.  I went -- because I did go to

10  Columbia to live, but when I got to Columbia, right before in my

11  presence they killed a person, and when they -- when the family

12  came or something, said "Forgive me," or -- "Oh, we can -- we

13  confused you with someone else," and so I felt like I was

14  threatened over there and that -- that town where I was living.

15         I don't have anybody to live with over there.  I

16  couldn't walk.  What I did decide was to return again to my

17  country, and then when I arrived over there I -- the threats

18  began again.

19         I don't have any money to protect myself.  My wife

20  went over to visit me there, and when my wife is there at the

21  house, a young man came -- young boy there, 14 years old,

22  arrived there and tells my wife and says, "Geronimo is being

23  looked for.  Four people are looking for Geronimo."  And I said

24  to say, well, that he moved from here, that he -- that he lives

25  in another city, and that's when I made the decision to return

1    here.

2         Now I can walk, but to -- six months ago I was -- I

3    had crutches, and I couldn't do anything.  I knew that when I

4    came in illegally what was going to happen to me, but -- and

5    it's not easy to see that one's death can be caused by somebody

6    who's following you, pursuing you.  I decided to return here,

7    and I was -- I said, well, if they catch me, I'm going to reopen

8    my case.  That's the only thing I can do, not that I wanted to

9    return.

10        I know everything that can happen to me here.  I was

11   doing well with my life in my country, working, and then I got

12   in my mind that I can't live here and I returned to my country.

13   I was in Immigration.  I was almost a year in Immigration

14   fighting this, and what my attorney says and my -- the judge was

15   asking for some sort of proof like if I was cooperating or

16   working for the government.  How can I get it?  I can't.

17        He told me to get a newspaper that -- where it might

18   be published in the newspaper, but I told the judge I couldn't

19   get that -- or the Immigration judge.  I talked to my wife, "I'm

20   going to return to my country.  We're going to make our lives

21   over there and look for work."  I was working, but the

22   Gutierrez -- Sergio Gutierrez won't let me live in peace, and

23   when -- when I came back here, I had an accident over at

24   Karnes -- Karnes.

25        I broke -- I have a pinched nerve here (indicating),

1   and I broke something here (indicating).  When I went to the

2   doctor, the lieutenant in charge of the jail tells me -- he

3   says, "Because you were so stupid, I'm going to put new charges

4   against you."  I knew all of that might happen to me if I were

5   to return here.

6          Now in the jail where I am now in Falfurrias -- and

7   they have the report there that I broke -- have a broken hand.

8   The only thing I can tell you, Your Honor, is that I'm not

9   asking for time served or anything, to give me the least

10  possible time you can so that I can go to Immigration.  I know

11  that I'm going to be like a year-and-a-half fighting my case in

12  Immigration so that my case can be opened again.  That's the

13  only thing that I can ask you, and if you could have some

14  consideration to help me.

15          THE COURT:  Well, unfortunately, Mr. Santos, you set

16  into motion the events that led up to your being the target of

17  that -- that, you know -- that family that now -- from what

18  you've told me and what has been testified to apparently now is

19  a consistent and persistent efforts to hurt you in some way.

20          Pursuant to the Sentencing Reform Act of 1984, you are

21  hereby sentenced to a term of imprisonment of 70 months in

22  connection with cause number 09-CR-1005.

23          The Court hereby -- having found that you have

24  violated your terms of supervised release hereby sentences you

25  to a term of imprisonment of imprisonment of 12 months.  Said

1  sentence is ordered to run consecutively to the sentence in

2  09-CR-1005.

3          Upon release from imprisonment I'm ordering that you

4  serve another term of supervised release of three years.  Sir,

5  do you understand that if you violate the law in any way during

6  the period of supervised release or illegally return to this

7  country, that either one of those or both could be a basis for

8  being revoked and being sent to prison such as I've ordered

9  today?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And if you are revoked because you've

12  committed a crime and you're also charged with that crime in a

13  new case, you could be again ordered to serve consecutive

14  sentences.  Do you understand that?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  And, additionally, after the period of

17  supervised release has ended, the fact that you have this

18  conviction as well as any other convictions that can be

19  documented can be used by a judge in the future in deciding your

20  punishment.  Do you understand that?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  The Court finds that you are indigent and

23  unable to pay a fine and, therefore, waives the imposition of a

24  fine.  However, the Court does impose a special assessment of

25  $100, which the Court will order remitted should the government

1   move to do so based upon your indigency.

2           MR. CASTRO:  Government moves to remit, Your Honor.

3           THE COURT:  Motion's granted.

4           Sir, this sentence is in conformance with the

5   Sentencing Reform Act of 1984.  As justification for the

6   sentence, the Court adopts the findings in the presentence

7   report.  The Court also relies on the evidence admitted during

8   this hearing in the form of Defendant's -- the defendant's

9   exhibits, and I believe that there were -- there was an

10  Exhibit 1 by the government as well.

11          The law does provide that you have a right to appeal

12  the Court's decision, and you can do so even though you're

13  indigent, but you must give notice of that intention within ten

14  days.

15          MR. RODRIGUEZ:  Your Honor, may we have a

16  recommendation that he do his time in New York and possibly a

17  hospital?

18          THE COURT:  I'll certainly make a recommendation that

19  he be evaluated for medical treatment, and if his desire is to

20  be -- for the recommendation to be for a facility in New York, I

21  understood that that was where he wanted to avoid being.

22          MR. RODRIGUEZ:  Well, he'll be in federal custody.

23  The Gutierrezes are in state custody, Your Honor.  I don't think

24  they'll cross paths there.

25          THE COURT:  All right.  Then I'll make the

1    recommendation to the Bureau of Prisons.

2              MR. RODRIGUEZ:  Thank you, Your Honor.

3              THE COURT:  Oh, I'm sorry.  You must give notice of

4    the intention to appeal within 14 days.  Thank you.

5                              * * *

6         *(End of requested transcript.)*

7                            -oOo-

8              I certify that the foregoing is a correct transcript

9    from the record of proceedings in the above matter.

10

11   Date:  March 12, 2010

12                              /s/ Heather Hall

13                              Signature of Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25